UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Ronald R. Rosen and June I. Trnka,

        Plaintiffs,

v.

Detective Brian Wentworth, Sergeant Bill Schmidt, and Officer Roxanne Affeldt, in their individual and official capacities as police officers for the City of Champlin, and Officer Robert Topp, in his individual and official capacity as a police officer for the City of Plymouth,

        Defendants.

**MEMORANDUM OPINION AND ORDER**
Civil No. 12-1188 ADM/FLN

---

Paul Applebaum, Esq., and Andrew M. Irlbeck, Esq., St. Paul, MN, Applebaum Law Firm, St. Paul, MN, on behalf of Plaintiffs.

Jason M. Hiveley, Esq., Iverson Reuvers Condon, Bloomington, MN, on behalf of Defendants.

---

## I. INTRODUCTION

This matter is before the undersigned United States District Judge on Defendants Sergeant Bill Schmidt and Officer Roxanne Affeldt's ("Defendants") Renewed Motion for a Directed Verdict or, in the Alternative, a New Trial [Docket No. 55]. Also before the Court is Plaintiffs' Ronald R. Rosen and June I. Trnka's ("Plaintiffs") Motion for Award of Attorney's Costs and Fees [Docket No. 77]. For the reasons stated herein, Defendants' motion is denied, and Plaintiffs' motion is granted in part and denied in part.

## II. BACKGROUND[1]

This case stems from a search conducted by Defendants Schmidt and Affeldt of the rear enclosed porch of Plaintiffs' home. On January 8, 2010, at approximately 12:55 a.m., Defendants responded to a burglary at a veterinary hospital in Champlin, Minnesota. The responding officers employed a police canine unit in an attempt to track and apprehend the burglar, who had fled the crime scene. The canine unit, operated by Officer Robert Topp,[2] initially found a scent at the veterinary hospital, but lost the scent nearby. Defendants continued to sweep the area using the canine unit, moving further along Downs Road and away from the hospital. After failing to find a scent as they proceeded along Downs Road, the canine eventually led Sergeant Schmidt and Officers Affeldt and Topp to Plaintiffs' home. Affeldt testified that she knocked on Plaintiffs' front door and received no response. Schmidt and Affeldt went to the rear of the home, entered the enclosed porch without knocking, and proceeded to knock on the interior house door. Receiving no response, Defendants inspected the belongings in the porch, took Rosen's shoes, and departed to return to the hospital area.

Defendants used their investigation, and Rosen's shoes, to obtain a search warrant for Plaintiffs' home. Weeks later, on January 22, 2010, Champlin police officers detained Rosen and executed the search warrant. For over an hour while the search proceeded, Detective Brian Wentworth questioned Rosen, including repeated threats to arrest him or a member of his family.

---

[1] The underlying facts will be fully amplified by the trial record. Only facts pertinent to the instant Motion will be discussed here. Because the trial testimony has not yet been transcribed, the Court is relying on its notes of the testimony.

[2] The parties stipulated to the dismissal of Officer Topp as a party to this action shortly before trial.

The search ultimately did not yield any evidence connected to the burglary.

About two weeks later, after reviewing the reports and evidence, Wentworth concluded that it was "obvious" Rosen's shoes did not match the footprints at the scene of the burglary, and concluded Plaintiffs played no role in the crime. Wentworth, who had completed the search warrant application based on information from Schmidt and Affeldt, then returned Rosen's shoes and apologized.

On or about April 30, 2012, Plaintiffs initiated this action in state court, shortly after which Defendants removed the action to federal court. See Not. of Removal [Docket No. 1]. Plaintiffs alleged four counts: the first alleged a violation of 42 U.S.C. § 1983, and the remaining three alleged related state law violations. Defendants moved for summary judgment and Detective Wentworth was dismissed, as were Plaintiffs' state law claims. Order, October 9, 2013 [Docket No. 27].

The case proceeded to trial on January 21, 2014. As part of their motions in limine, Plaintiffs requested a directed verdict finding the search of their home unconstitutional as a matter of law. Before the start of trial, the Court held it would instruct the jury that the January 8, 2010 warrantless entry into Plaintiffs' porch and the search of their belongings violated Plaintiffs' Fourth Amendment rights as a matter of law. The Court also held that while the resulting search warrant issued lawfully, the jury could decide whether the January 22, 2010 search and detainment occurred as the result of the illegal search, and to what degree, if any, this search should affect an award of damages.

On January 23, 2014, the jury returned a verdict in Plaintiffs' favor. The jury awarded $10,000 in compensatory damages to Plaintiffs Rosen and Trnka. The jury also found Defendant

Schmidt liable for $55,000 in punitive damages, and Defendant Affeldt liable for $15,000 in punitive damages. See Special Verdict Form [Docket No. 62].

### III.  DISCUSSION

**A.  Motion for Judgment as a Matter of Law**

At the close of Plaintiffs' case-in-chief, Defendants moved for judgment as a matter of law, or, in the alternative, a mistrial, based on the Court's ruling regarding the constitutionality of Defendants' initial search. See Fed. R. Civ. P. 50(a)(2). The motion was denied. Defendants now renew their motion.

Judgment as a matter of law is appropriate only when there is insufficient evidence to permit a reasonable jury to find in favor of the nonmoving party. Gardner v. Buerger, 82 F.3d 248, 251 (8th Cir.1996). The facts must be viewed in the light most favorable to the verdict, assuming that the jury resolved all evidentiary conflicts in favor of the prevailing party. Van Steenburgh v. Rival Co., 171 F.3d 1155, 1158 (8th Cir.1999). A jury's verdict should not be overturned unless no reasonable juror could have found in favor of the prevailing party. Id.; Ryther v. KARE 11, 108 F.3d 832, 836 (8th Cir. 1997).

Defendants argue qualified immunity should have shielded them from liability because their entry and search of the porch was constitutional, and that even if it was not, it was not clearly established that their actions were unconstitutional. Defendants' primary argument is that the "knock and talk" exception to the Fourth Amendment applied to their actions. Evidence at trial demonstrated, Defendants argue, that the officers knocked on the front door of Plaintiffs' home before proceeding to the rear, thus satisfying the Court's interpretation of the knock and talk exception. Regardless, Defendants argue they were justified in concluding the rear porch

4

was the main entry to the residence.

The knock and talk exception to the Fourth Amendment does not apply to the facts in this case. Defendants misunderstand the Court's interpretation of <u>United States v. Wells</u>, 648 F.3d 671, 680 (8th Cir. 2011). <u>Wells</u> held that officers acting in accordance with the knock and talk rule must attempt to reach a home's residents by the most logical route; in that case, the front door. But knocking at the most logical entry point to the home does not then create a blanket exception under which officers may proceed to knock at every other door to the home, or to search the entire curtilage. As this Court held at summary judgment, the license granted by the knock and talk rule is the same license granted to an unknown visitor: it "typically permits the visitor to approach the home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) <u>leave</u>." <u>Florida v. Jardines</u>, 133 S. Ct. 1409, 1415 (2013) (emphasis added). Defendants testified at trial that they knocked at the front door, demonstrating that they saw the door and knew it was the logical point of entry. But Defendants did not leave after failing to raise Plaintiffs. Instead, Defendants proceeded to search the rear porch. The knock and talk rule does not protect this conduct. <u>See</u> <u>id.</u>

Defendants also unreasonably concluded that the rear porch of Plaintiffs' home was the visitor's entrance. There was no dispute—at summary judgment or at trial—that the officers saw the front door from the road, and that they knew it had paved path leading to it. The same factors discussed at summary judgment, and in <u>Wells</u> and <u>Jardines</u>, again apply here. <u>See</u> <u>Rosen v. Wentworth</u>, No. 12-1188, 2013 WL 5567447, at *7 (D. Minn. Oct. 9, 2013). No reasonable juror could conclude that the front door was anything other than the "logical" point for visitors to attempt to engage the occupants. <u>Wells</u>, 648 F.3d at 680. After entering the rear porch in the

middle of the night, Defendants again attempted to raise Plaintiffs but failed to do so. Defendants then searched Plaintiffs' personal belongings and took property without leaving a receipt or any other indication of their actions or the fact they had been there. A credibility assessment is not necessary to determine this conduct falls outside of the typical license granted to visitors, and thus outside of the knock and talk rule. The same conduct by one not a police officer would be considered theft.

Whether Defendants knocked on the front door or not, no reasonable jury could have concluded that Defendants constitutionally entered and searched Plaintiffs' property. As a result, the Court's instruction regarding the January 8, 2010 search was not in error, and the jury's damages verdict is supported by the evidence at trial.

**B. Motion for New Trial**

Defendants move in the alternative for a new trial. See Fed. R. Civ. P. 50(b)(1)(B), 59(a)(1). The authority to grant a new trial is in the discretion of the trial court. Gray v. Bicknell, 86 F.3d 1472, 1480 (8th Cir. 1996). A new trial is appropriate when the first trial resulted in a "miscarriage of justice" due to a verdict against the weight of the evidence, an excessive damage award, or legal errors at trial. Id.

For the same reasons summarized above, Defendants argue the Court committed legal error by instructing the jury that the January 8, 2010 search and seizure was unconstitutional. As discussed above, this argument does not warrant a new trial.

In addition, Defendants argue the jury should not have heard evidence regarding the search warrant application and the January 22, 2010 search of Plaintiffs' home because these events were legal and irrelevant to the original search. At summary judgment, the Court held

that the search warrant was not obtained based on knowing or reckless falsehoods, and that as a result, the subsequent search did not violate Plaintiffs' constitutional rights. The jury received instructions accordingly. But a reasonable jury could have still concluded that the search warrant application and the January 22, 2010 search were the direct or probable consequences of the January 8, 2010 entry and search. As a result, the jury was allowed to hear evidence of those events and instructed to decide what damages, if any, directly stemmed from the initial entry and search. Defendants cite no legal authority for why a jury should be precluded from hearing evidence of events that occurred after an initial illegal act, if those subsequent events—though themselves legal—may have caused injury to Plaintiffs. As a result, this challenge does not demonstrate the need for a new trial.

Also on the subject of damages, Defendants argue the jury should not have been instructed on punitive damages. In support, Defendants argue the Court's prior rulings held Defendants did not make knowingly false statements in their reports or in Wentworth's application for the January 22, 2010 search warrant. At trial, however, Plaintiffs introduced evidence and elicited testimony that provided a reasonable basis for awarding punitive damages. See Coleman v. Rahija, 114 F.3d 778, 787 (8th Cir. 1997) (holding jury may determine punitive damages where defendant's conduct involves "evil motive or intent" or "reckless or callous indifference" to federally-protected rights) (citations omitted). Schmidt made a series of crude personal attacks on Rosen's character, and suggested he intended to pursue Rosen out of anger or personal animosity. Plaintiffs also introduced evidence suggesting Defendants pursued their investigation of Rosen in deliberate ignorance of the facts. This evidence could allow a reasonable factfinder to conclude Defendants recklessly disregarded Plaintiffs' constitutional

rights. As a result, the question of punitive damages was properly put to the jury.

Finally, Defendants argue the Court erred by failing to declare a mistrial during closing arguments. In his closing argument, Plaintiffs' counsel Paul Applebaum stated without elaboration that Defendants "don't pay." Defendants argue Applebaum's statement implied to the jury that Defendants would not suffer personal financial impact as a result of a verdict against them, and thus Applebaum improperly encouraged the jury to find more than nominal damages. Plaintiffs respond that Applebaum's "don't pay" statement was in response to, and an invited error prompted by, Defendants' counsel's own closing argument. See Roth v. Homestake Mining Co. of Cal., 74 F.3d 843, 845 (8th Cir. 1996) ("An erroneous ruling generally does not constitute reversible error when it is invited by the same party who seeks on appeal to have the ruling overturned."). In his closing argument, Defendants' counsel Jason Hiveley told the jury Defendants should not be required to "finance" Plaintiffs' "new American dream." Application of the invited error doctrine aside, these two statements are of comparably prejudicial effect. The parties discussed this issue at sidebar, and the jury received an appropriate curative instruction. The decision to deny a mistrial on this basis did not result in a "miscarriage of justice." Gray, 86 F.3d at 1480.

**C. Plaintiffs' Motion for Attorney's Costs and Fees**

42 U.S.C. § 1988(b) states the trial court may allow reasonable attorney's fees to a party that prevails in an action to enforce § 1983. As indicated above, Defendants contend the jury reached its verdict as the result of error. Nevertheless, for the purposes of Plaintiffs' fee motion, Defendants do not dispute that Plaintiffs prevailed at trial.

The Supreme Court has outlined several factors a trial court may weigh when determine

whether a request for attorney's fees is reasonable:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and the ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Hensley v. Eckerhart, 461 U.S. 424, 430 n.3 (2008) (citing Johnson v. Ga. Highway Exp., Inc., 488 F.2d 714, 717-19 (5th Cir. 1984)). The court reviewing the fee request need not explicitly consider every factor. Griffin v. Jim Jamison, Inc., 188 F.3d 996, 997 (8th Cir. 1999). The court should start assessing attorney fees by determining the lodestar, which is "calculated by multiplying the number of hours reasonably expended by the reasonable hourly rates." Fish v. St. Cloud State Univ., 295 F.3d 849, 851 (8th Cir. 2002).

Plaintiffs' counsel request $255,929.00 in attorney's fees and $1,070.69 in costs, for a total lodestar amount of $256,999.69. The fee request represents 305.9 hours of work performed by Applebaum, 441.9 hours of work performed by his associate Andrew Irlbeck, 30.4 hours of worked performed by Irlbeck as a law clerk, and 274.2 hours of work performed by Elizabeth Meske, paralegal for the firm. Paul Applebaum Aff. [Docket No. 79] Ex. 5 ("Fee Invoice").

Plaintiffs have stated reasonable hourly rates. Applebaum, an attorney for over 20 years, has stated an hourly rate of $450. Irlbeck, an attorney for about three years, has stated a rate of $225, along with a rate of $95 for when he worked on the case as a clerk. Meske, the firm's paralegal, has stated a rate of $95. Defendants argue Plaintiffs' counsel have not justified their billing rates, but Defendants do not offer any argument as to why these rates should be

discounted or to what degree.  Further, Plaintiffs submit three affidavits from local attorneys confirming the reasonableness of Applebaum's stated hourly rate.  See Applebaum Aff. Ex. 1 (Earl Gray Aff.), Ex. 2 (Paul Engh Aff.), Ex. 3 (Eric Hageman Aff.).  Similar cases in this district also appear to support the stated hourly rates.  See, e.g., Rasmusson v. City of Bloomington, No. 12-632, 2013 WL 3353931, at *2-3 (D. Minn. July 3, 2013).  Based on their relative experience, the supporting materials, and the Court's own knowledge of the market, Plaintiffs' stated rates are reasonable.  See Warnock v. Archer, 397 F.3d 1024, 1027 (8th Cir. 2005) ("[W]hen fixing hourly rates, courts may draw on their own experience and knowledge of prevailing market rates.").

Defendants make several objections to the hours claimed by Plaintiffs.  Defendants argue counsel's billing statements are in a vague, "block style," and should be discounted as a result.  Defendants also argue counsel has overbilled or "over-lawyered" much of their work in this case, and that counsel has improperly billed for clerical tasks.  Further, Defendants argue Plaintiffs should not be allowed to recover "fees on fees," or attorney's fees for preparing the present motion.  Finally, after subtracting various amounts for the previous objections, Defendants argue Plaintiffs' remaining fees should be reduced by 75% due to Plaintiffs' limited recovery, resulting in a total fee of $32,450.48.[3]

A reduction of counsel's requested fees is appropriate.  While counsel's billing statements are not so vague as to warrant a blanket reduction, counsel have "over-lawyered" or overbilled their work on this case.  For example, Applebaum spent a total of 6.9 hours preparing

---

[3] Defendants also correctly argue Plaintiffs' counsel have improperly requested costs for private service of process.  The requested costs are reduced accordingly.

for his closing argument, and Irlbeck and Meske assisted Applebaum for 5.1 and 2.1 hours, respectively. Id. at 24, 33. Thus, Plaintiffs' counsel spent a total of 14.1 work-hours preparing a 45-minute closing argument, which was given at the close of a three-day trial. Counsel also spent about 58.3 hours, both before and after trial, re-listening to the same few hours of audio tape and re-reading the same few police reports.[4] See id. at 10, 11, 22, 23, 29, 31, 32. Counsel's billing statements reflect several similar inefficiencies.

Counsel's claimed hours are also excessive in light of the nature of the litigation and subsequent trial. The facts of this case related primarily to the events of a single night and the subsequent aftermath. The number of parties and conduct at issue was relatively straightforward. Unlike many § 1983 claims, here there was no use of force by the police officers, nor were there any physical injuries. As a result, discovery was limited to a small number of witnesses and relatively few material pieces of evidence. The trial itself was brief, and testimony was completed in two days. Additionally, the legal issues in summary judgment and at trial were not particularly novel or complex. These facts all weigh strongly in favor of reducing counsel's requested fees.

Defendants' request for a reduction in fees due to the dismissal of defendants and claims is also partially persuasive. Three state law claims and two defendants were dismissed from this action with prejudice. Although Plaintiffs obtained significant damages at trial, it cannot be ignored that Plaintiffs named Defendants and alleged claims for which they performed work but ultimately did not obtain recovery. See Hensley, 461 U.S. at 436 ("If . . . a plaintiff has achieved

---

[4] This estimate includes the review of other materials, such as discovery documents, as well as meetings to discuss the audio tapes and records. Counsel did not submit sufficient detail with which to further delineate the time spent.

only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith."). Plaintiffs' partial success warrants a reduction in fees, but the strength of their verdict does not support the 75% reduction suggested by Defendants.

In addition, counsel attempts to collect attorney's fees for a number of routine clerical tasks. Although Defendants slightly overstate the amount of billed clerical work, most of Defendants' estimate is accurate. Plaintiffs' counsel recorded about 100 hours for tasks such as printing documents, mailing letters, and collating files. See Jason Hiveley Aff. [Docket No. 84] Ex. E. Such tasks cannot fairly be accounted for at an attorney's, or even a paralegal's, billing rate. See, e.g., I-Systems, Inc. v. Softwares, Inc., No. Civ.021951, 2005 WL 1430323, at *14 (D. Minn. Mar. 7, 2005); MacGregor v. Mallinckrodt, Inc., No. 01-828, 2003 WL 23335194, at *12 (D. Minn. July 21, 2003).

With respect to "fees on fees," "[t]ime spent preparing fee applications is generally compensable." El-Tabech v. Clarke, 616 F.3d 834, 843-44 (8th Cir. 2010). However, such fees should not be excessive. See id. (finding 77.7 hours excessive given amount properly compensable). Here, counsel spent over 60 hours, or $15,990, preparing this motion for attorney's fees. Given the issues underlying the litigation, and the nature of the motion at hand, this amount is excessive. The compiling of fees, and the subsequent motion practice, did not involve particularly complex or novel issues.

Plaintiffs' obtained a favorable verdict after significant effort and investment, and attorneys should not be discouraged from litigating § 1983 cases with similarly commendable

effort. Nevertheless, based on a careful review of the billing statements, a reduction of 50% reflects a fair billing for the work performed in this case. See Kline v. City of Kansas City, 245 F.3d 707, 709 (8th Cir. 2001). Though not an exact calculation, the reduction accounts for the overbilled or "over-lawyered" work, the nature of the case and its ultimate result, the fees requested for clerical tasks, and the excessive time spent preparing the present motion. This reduction also reflects the dismissal of three claims and Defendants Wentworth and Topp. Even with the reduction, the amount of attorney's fees still significantly exceeds the amount of their clients' recovery from a generous jury.

## IV. CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants' Renewed Motion for a Directed Verdict or, in the Alternative, a New Trial [Docket No. 55] is **DENIED**.

2. Plaintiffs' Motion for Award of Attorney's Costs and Fees [Docket No. 77] is **GRANTED** in part and **DENIED** in part.

3. Plaintiffs are awarded $127,964.50 in attorney's fees, and $930.72 in costs.

BY THE COURT:

    s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: April 9, 2014.